**SCHIAN WALKER, P.L.C.**
1850 NORTH CENTRAL AVENUE, #900
PHOENIX, ARIZONA 85004-4531
TELEPHONE: (602) 277-1501
FACSIMILE: (602) 297-9633
NATHAN T. MITCHLER, #028751
TYLER J. GRIM, #031300
EMAIL: nathan@biz.law
EMAIL: tyler@biz.law
Attorneys for Plaintiff

E-Mail for Electronic Service:
bkdocket@biz.law

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Advanced Reimbursement Solutions, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>Spring Excellence Surgical Hospital, LLC, a Texas limited liability company, Joanna Davis, an individual,<br><br>Defendant. | No. _____<br><br>**COMPLAINT** |

For its Complaint against Defendants Spring Excellence Surgical Hospital, LLC ("**Spring Excellence**") and Joanna Davis ("**Davis**" and with Spring Excellence, "**Defendants**"), Plaintiff Advanced Reimbursement Solutions, LLC ("**Advanced Reimbursement**"), alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Advanced Reimbursement is a Delaware limited liability company with its principal place of business in Phoenix, Arizona.

2. Upon information and belief, Spring Excellence is a Texas limited liability

00351038.8

1  company with its principal place of business in Harris County, Texas.

2  3. This Court has subject matter jurisdiction of this case pursuant to 28 U.S.C.
3  § 1332.

4  4. This Court has personal jurisdiction over Defendants pursuant to Ariz. R. Civ. P.
5  4.2(a) as events, transactions, and occurrences that are the subject of the Complaint, including
6  performance (or non-performance) of the contract at issue, occurred at least in part in this
7  District.

8  5. Venue is proper pursuant to 28 U.S.C. § 1391.

9  6. This Court has personal jurisdiction over Defendants and venue is proper pursuant
10  to the explicit terms of the Executive Billing Agreement ("**EBA**") entered into between
11  Advanced Reimbursement and Spring Excellence. As delineated herein, the EBA is the
12  operative document in this proceeding and gives rise to the causes of actions.

13  7. Pursuant to the EBA, "each Party irrevocably submits to the exclusive jurisdiction
14  of the federal and state courts located in Phoenix, Arizona for the purposes of any action or
15  proceeding arising out of or relating to the [EBA]." EBA at Section 12(e).

16  **GENERAL ALLEGATIONS**

17  8. Advanced Reimbursement is a third-party medical billing service.

18  9. Advanced Reimbursement contracts with medical providers and facilities to
19  process and bill out-of-network health insurance claims and obtains significant reimbursements
20  for its clients.

21  10. When engaged by a new customer, Advanced Reimbursement requires the

1  company with its principal place of business in Harris County, Texas.

2  3. This Court has subject matter jurisdiction of this case pursuant to 28 U.S.C.
3  § 1332.

4  4. This Court has personal jurisdiction over Defendants pursuant to Ariz. R. Civ. P.
5  4.2(a) as events, transactions, and occurrences that are the subject of the Complaint, including
6  performance (or non-performance) of the contract at issue, occurred at least in part in this
7  District.

8  5. Venue is proper pursuant to 28 U.S.C. § 1391.

9  6. This Court has personal jurisdiction over Defendants and venue is proper pursuant
10  to the explicit terms of the Executive Billing Agreement ("**EBA**") entered into between
11  Advanced Reimbursement and Spring Excellence. As delineated herein, the EBA is the
12  operative document in this proceeding and gives rise to the causes of actions.

13  7. Pursuant to the EBA, "each Party irrevocably submits to the exclusive jurisdiction
14  of the federal and state courts located in Phoenix, Arizona for the purposes of any action or
15  proceeding arising out of or relating to the [EBA]." EBA at Section 12(e).

16  **GENERAL ALLEGATIONS**

17  8. Advanced Reimbursement is a third-party medical billing service.

18  9. Advanced Reimbursement contracts with medical providers and facilities to
19  process and bill out-of-network health insurance claims and obtains significant reimbursements
20  for its clients.

21  10. When engaged by a new customer, Advanced Reimbursement requires the

medical provider or facility to execute an EBA, among various other agreements including a non-disclosure agreement ("**NDA**") and business associate agreement ("**BAA**").

11. In August 2016, representatives from Spring Excellence began discussions with a salesperson from Advanced Reimbursement, Jeff Webb, about a potential customer relationship with Advanced Reimbursement.

12. On August 15, 2016, Spring Excellence executed a BAA with Advanced Reimbursement and American Surgical Development, LLC ("**American Surgical**").

13. The BAA was executed by Davis as CEO of Spring Excellence.

14. On August 16, 2016, Excellence Medical Group, LLC ("**Excellence Medical**") signed a NDA with American Surgical.

15. The NDA was executed by Davis as CEO of Excellence Medical.

16. Upon information and belief, Excellence Medical is the management entity for Spring Excellence.

17. Concurrent with the execution of the NDA, Advanced Reimbursement entered into a "Mutual Non-Disclosure Agreement Document Addendum No. 1" (the "**Addendum**") with Spring Excellence.

18. The Addendum was "expressly incorporated into and made a part of the NDA." Addendum at § 1.

19. The Addendum was executed by Davis as CEO of Spring Excellence.

20. Pursuant to the terms of the NDA and Addendum, Spring Excellence and Excellence Medical are generally prohibited from disclosing and documents or confidential

information (as defined in the NDA) received from either Advanced Reimbursement or American Surgical.

21. After the NDA and BAA were executed, Advanced Reimbursement sent a draft of an EBA to Spring Excellence for review.

22. On August 26, 2016, Davis sent back the draft EBA to Advanced Reimbursement with markups on behalf of Spring Excellence.

23. Among other proposed changes and requests for clarification, Davis requested that Advanced Reimbursement's fee be reduced from the standard twenty percent (20%) to fifteen percent (15%) of the amount of claims reimbursement retrieved through Advanced Reimbursement's efforts.

24. On August 31, 2016, representatives of Advanced Reimbursement participated in a conference call with Davis regarding the proposed EBA between Advanced Reimbursement and Spring Excellence.

25. That same day, Advanced Reimbursement sent a revised version of the EBA to Davis with an agreed-upon rate of seventeen and one-half percent (17.5%) for Advanced Reimbursement's fee.

26. The revised version of the EBA also made the non-solicitation clause mutual and altered certain details to Advanced Reimbursement's practice management services.

27. On September 2, 2016, Davis sent the executed EBA for Spring Excellence to Advanced Reimbursement, along with completed W-9 forms and the Spring Excellence Charge Master document that listed Spring Excellence's billing rates per code.

28. The EBA between Spring Excellence and Advanced Reimbursement engaged Advanced Reimbursement on an exclusive basis to provide out-of-network claims billing services for a one-year initial term.

29. The EBA restricted Spring Excellence from billing out-of-network claims directly, indirectly, or through any third-party that was not Advanced Reimbursement.

30. In return for providing out-of-network claims reimbursement services, Advanced Reimbursement would be paid seventeen and one-half percent (17.5%) of all claims reimbursements received for claims submitted on behalf of Spring Excellence.

31. Advanced Reimbursement was also entitled to receive twenty-five percent (25%) of all amounts received as a result of Advanced Reimbursement's appeal or redetermination services for claims that were denied or underpaid.

32. Spring Excellence was also required to pay for all costs and expenses incurred in providing services.

33. Spring Excellence was required to pay Advanced Reimbursement no later than ten (10) business days from the date of each monthly invoice.

34. If Spring Excellence failed to timely pay an invoice in full, it was required to pay a late fee equal to the greater of $150.00 or ten percent (10%) of the unpaid invoice amount.

35. Any unpaid invoice amount would also accrue interest at the rate of eighteen percent (18%) per annum until paid in full.

36. The EBA would automatically renew following the expiration of the initial term unless proper written notice of non-renewal was given by one of the parties.

37. Pursuant to the EBA, Advanced Reimbursement set up Spring Excellence with its out-of-network billing process, and began to submit healthcare claims to insurance payers for reimbursement.

38. Throughout this initial process, representatives from Advanced Reimbursement worked closely and in a professional, courteous manner with representatives from Spring Excellence.

39. On or about December 1, 2016, Advanced Reimbursement sent its first invoice to Spring Excellence for services rendered.

40. The invoice reflected $44,041.00 in claims reimbursements obtained by Advanced Reimbursement on behalf of Spring Excellence.

41. At the contracted rate of seventeen and one-half percent (17.5%), Advanced Reimbursement was entitled to a payment of $7,707.18, plus additional costs for a total of $7,723.14.

42. Spring Excellence has failed or refused to pay the amounts due under the December 1, 2016 invoice from Advanced Reimbursement.

43. On or about January 3, 2017, Advanced Reimbursement sent its second invoice to Spring Excellence for services rendered.

44. The invoice reflected $92,865.99 in claims reimbursements obtained by Advanced Reimbursement on behalf of Spring Excellence.

45. At the contracted rate of seventeen and one-half percent (17.5%), Advanced Reimbursement was entitled to a payment of $16,251.55, plus additional costs for a total of

$16,258.31.

46. Spring Excellence has failed or refused to pay the amounts due under the January 3, 2017 invoice from Advanced Reimbursement.

47. On or about February 1, 2017, Advanced Reimbursement sent its third invoice to Spring Excellence for services rendered.

48. The invoice reflected $577,933.21 in claims reimbursements obtained by Advanced Reimbursement on behalf of Spring Excellence.

49. At the contracted rate of seventeen and one-half percent (17.5%), Advanced Reimbursement was entitled to a payment of $101,138.31, plus additional costs for a total of $101,169.52.

50. Spring Excellence has failed or refused to pay the amounts due under the February 1, 2017 invoice from Advanced Reimbursement.

51. On or about February 27, 2017, Advanced Reimbursement sent its fourth invoice to Spring Excellence for services rendered.

52. The invoice reflected $506,899.82 in claims reimbursements obtained by Advanced Reimbursement on behalf of Spring Excellence.

53. At the contracted rate of seventeen and one-half percent (17.5%), Advanced Reimbursement was entitled to a payment of $88,707.47, plus additional costs for a total of $88,816.03.

54. Spring Excellence has failed or refused to pay the amounts due under the February 27, 2017 invoice from Advanced Reimbursement.

55. On or about April 17, 2017, Advanced Reimbursement sent its fifth invoice to Spring Excellence for services rendered.

56. The invoice reflected $1,564,372.59 in claims reimbursements obtained by Advanced Reimbursement on behalf of Spring Excellence.

57. At the contracted rate of seventeen and one-half percent (17.5%), Advanced Reimbursement was entitled to a payment of $273,765.20, plus additional costs for a total of $273,852.76.

58. Spring Excellence has failed or refused to pay the amounts due under the April 17, 2017 invoice from Advanced Reimbursement.

59. Subsequent to the April 17, 2017 invoice, additional claims reimbursements were obtained by Advanced Reimbursement on behalf of Spring Excellence.

60. Advanced Reimbursement is entitled to payment at the contracted rate of seventeen and one-half percent (17.5%) for these reimbursements.

61. Defendants have failed to pay these additional amounts.

62. Spring Excellence is required to reimburse Advanced Reimbursement the contracted rate of seventeen and one-half percent (17.5%) for any additional claims reimbursements obtained by Advanced Reimbursement on behalf of Spring Excellence from the date of this Complaint forward.

63. Late fees and past due interest are also due from Spring Excellence for all of the invoices delineated above.

## COUNT ONE

**Breach of Contract – EBA**
**(as to Spring Excellence)**

64. Advanced Reimbursement incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein.

65. The EBA between Advanced Reimbursement and Spring Excellence is a valid, binding, and enforceable contract.

66. Spring Excellence has materially breached the terms of the EBA by, among other things, failing to pay the invoiced amounts to Advanced Reimbursement for its billing services.

67. As a direct and proximate result of Spring Excellence's breach, Advanced Reimbursement has suffered damages in an amount to be proven at trial, but in no event less than the amount of all outstanding invoices, or $487,819.76, including late fees and interest penalties.

68. Advanced Reimbursement is also entitled to recover its reasonable attorneys' fees and costs related to Spring Excellence's breach pursuant to A.R.S. § 12-341.01, A.R.S. § 12-341, and Section 12(e) of the EBA.

## COUNT TWO

**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(as to Spring Excellence)**

69. Advanced Reimbursement incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein.

70. The EBA contains an implied covenant of good faith and fair dealing whereby

Spring Excellence was prohibited from depriving Advanced Reimbursement of the benefits of the ESB.

71. Contrary to its duty to act in good faith, Spring Excellence deprived Advanced Reimbursement of the benefits of the bargain by failing to timely pay obligations due and owing under the EBA.

72. As a direct and proximate result of Spring Excellence's violation of the covenants of good faith and fair dealing, Advanced Reimbursement has been damaged in an amount to be determined at trial, but in no event less than the amount of all outstanding invoices, or $487,819.76, including late fees and interest penalties.

73. Advanced Reimbursement is also entitled to recover its reasonable attorneys' fees and costs related to Spring Excellence's breach pursuant to A.R.S. § 12-341.01, A.R.S. § 12-341, and Section 12(e) of the EBA.

### COUNT THREE (IN THE ALTERNATIVE TO COUNT I)

**Unjust Enrichment**
**(as to Spring Excellence)**

74. Advanced Reimbursement incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein.

75. In the alternative to Count One, Advanced Reimbursement asserts that Spring Excellence has been unjustly enriched by the conduct set forth above, including but not limited to failing to timely and fully pay invoices for Advanced Reimbursement's services.

76. Advanced Reimbursement has been impoverished as a result of Spring

Excellence's misconduct.

77. Spring Excellence's enrichment and Advanced Reimbursement's impoverishment are not justified and, in equity and good conscience, Spring Excellence must compensate Advanced Reimbursement.

78. Advanced Reimbursement does not have an adequate remedy provided by law.

79. As a direct and proximate result of Spring Excellence's misconduct, Advanced Reimbursement has suffered damages in an amount to be proven at trial, but in no event less than the amount of all outstanding invoices, or $487,819.76, including late fees and interest penalties.

**COUNT FOUR (IN THE ALTERNATIVE TO COUNT I)**

**Breach of the Implied Warranty of Authority**
**(as to Davis)**

80. Advanced Reimbursement incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein.

81. In executing the EBA as the CEO of Spring Excellence, Davis acted as an agent of Spring Excellence.

82. Advanced Reimbursement relied on Davis's representations that she had authority to bind Spring Excellence to the terms of the EBA.

83. In the absence of Davis's representations, Advanced Reimbursement would not have entered into the EBA.

84. In the event the trier of fact determines that Davis did not have authority to bind

-11-

Spring Excellence to the terms of the EBA, Davis, in her individual capacity, breached the implied warranty of authority.

85. As a direct and proximate result of Davis's misconduct, Advanced Reimbursement has suffered damages in an amount to be proven at trial, but in no event less than the amount of all outstanding invoices, or $487,819.76, including late fees and interest penalties.

WHEREFORE, Advanced Reimbursement prays for judgment against Spring Excellence, as follows:

A. An award of all available compensatory, restitutionary, or other money damages incurred as a result of Spring Excellence's misconduct;

B. An award of interest at the contracted rate of eighteen percent (18%) per annum or the highest rate allowable by law;

C. An award of all reasonable attorney's fees and costs incurred by Advanced Reimbursement pursuant to A.R.S. § 12-341.01, A.R.S. § 12-341, and Section 12(e) of the EBA; and

D. Such other relief to which Advanced Reimbursement may be entitled to in law or equity.

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this Complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if

1 specifically so identified, will likely have evidentiary support after a reasonable opportunity for
2 further investigation or discovery; and (4) the complaint otherwise complies with the
3 requirements of Rule 11.

4     DATED this <u>31st</u> day of May, 2017.

5           SCHIAN WALKER, P.L.C.

6           By <u>/s/ NATHAN T. MITCHLER, #028751</u>
              Nathan T. Mitchler
7               Tyler J. Grim
              Attorneys for Plaintiff