1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Advanced Reimbursement Solutions LLC, | No. CV-17-01688-PHX-DWL |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Spring Excellence Surgical Hospital LLC, | |
| Defendant. | |

Pending before the Court is Defendant Spring Excellence Surgical Hospital, LLC's ("SESH") Renewed Motion to Transfer Venue to the Southern District of Texas. (Doc. 149.) The motion is fully briefed and neither party has requested oral argument. For the reasons that follow, the motion will be denied.

**BACKGROUND**

Plaintiff Advanced Reimbursement Solutions, LLC ("ARS") is a third-party medical billing service located in Phoenix, Arizona that contracts with medical providers to process and bill out-of-network health insurance claims. (Doc. 136 ¶¶ 1, 12.) ARS alleges that it entered into a contract, the Executive Billing Agreement (the "Billing Agreement"), with SESH, a hospital located in Texas, and that SESH did not fully perform under the Billing Agreement. (*Id.* ¶¶ 3, 39-65, 83-99.) Joanna Davis ("Davis"), representing herself to be SESH's CEO, executed the Billing Agreement on behalf of SESH. (*Id.* ¶ 49.) Initially, SESH and Davis were both named as defendants, but ARS recently dismissed Davis as a party. (Doc. 175.)

SESH previously requested to transfer venue to the Southern District of Texas. (Doc. 22.) The Court ruled that venue was proper in this District and declined to "address whether the Southern District of Texas is a more convenient forum" because SESH had "fail[ed] . . . to develop this argument." (Doc. 40 at 7 & n.1.)

SESH now renews its motion to transfer under 28 U.S.C. § 1404(a) and § 1412. SESH contends this case has many ties to the Southern District of Texas, including that: (1) SESH's business operations are located in the Southern District of Texas; (2) the three initial managers and the individuals with ownership interests in the sole initial member, Excellence Medical Group, LLC ("EMG"), of SESH and the current controlling member of the entity with a controlling interest in SESH are residents of the Southern District of Texas; (3) SESH and related entities initiated a lawsuit against EMG and its principals in the Southern District of Texas on May 8, 2017; (4) EMG filed a voluntary petition for Chapter 7 bankruptcy protection in Bankruptcy Court for the Southern District of Texas on October 30, 2017; (5) Devorshia Russell, one of SESH's initial managers, filed a voluntary petition for Chapter 11 bankruptcy in Bankruptcy Court for the Southern District of Texas on April 28, 2018; and (6) Davis filed a voluntary petition for Chapter 7 bankruptcy in Bankruptcy Court for the Southern District of Texas on July 18, 2018. (Doc. 149 at 3-4; Doc. 149-1 [Exs. 1-3].) SESH further asserts that it intends to assert cross-claims against Davis and (possibly) third-party claims against Russell and that, under the forum-selection clause in SESH's initial operating agreement, such claims would need to be litigated in the Southern District of Texas. (Doc. 149 at 10-11.)

In its response, ARS points out that SESH failed to acknowledge, let alone seek to distinguish, a different forum-selection clause. (Doc. 182 at 2.) Specifically, the Billing Agreement—the very contract at issue in this case—contains a forum-selection clause that provides, in relevant part:

> [E]ach party irrevocably submits to the exclusive jurisdiction of the federal and state courts located in Phoenix, Arizona for the purposes of any action or proceeding arising out of or relating to this Agreement. Each party hereby consents to such jurisdiction and agrees that venue shall lie in the state or federal courts within Phoenix, Arizona with respect to any claim or cause of action arising under or relating to this Agreement. Each party hereby waives

> any objection based on *forum non conveniens* and waives any objection to venue of any action instituted hereunder.

(Doc. 182-1 at 9.) Even in its reply, SESH for the most part ignores ARS's forum-selection clause argument, but does at least imply that it shouldn't be bound by the forum-selection clause because Davis lacked authority to execute the Billing Agreement on its behalf. (*See* Doc. 185 at 8 ["ARS . . . argues that SESH waived any argument against litigating in Arizona because SESH is allegedly bound by a contract, which Davis signed without proper authority, to litigate in Arizona, which is only convenient for ARS."].) SESH's statement relates to what appears to be one of its defenses to the entire action—that Davis did not have authority to bind SESH.

## ANALYSIS

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).[1] Ordinarily, under § 1404(a), a district court conducts a two-step analysis, determining first "whether the case could have been brought in the forum to which the moving party seeks to transfer the case" and second "whether the proposed transferee district is a more suitable choice of venue based upon the convenience of the parties and witnesses and the interests of justice." *R. Prasad Indus. v. Flat Irons Envtl. Sols. Corp.*, 2017 WL 4409463, *2-3 (D. Ariz. 2017) (quoting *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1093 (N.D. Cal. 2013)). When making the second determination, the court will consider a variety of factors, including those enumerated by the Ninth Circuit in

---

[1] 28 U.S.C. § 1412 similarly provides: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Courts diverge on whether to apply § 1404(a) or § 1412 to cases "related to" bankruptcy proceedings. *See Gibbs v. Rees*, 2018 WL 1460705, *7 (E.D. Va. 2018) (footnote omitted) ("Nationally, no appellate court has directly decided the issue, but federal district courts diverge over whether § 1412 or § 1404(a) should govern transfer of actions 'related to' bankruptcy proceedings."). The Court need not decide the issue here, however, as the relevant considerations under these statutes—the interests of justice and the convenience of the parties—are the same. Moreover, there is no reason to think the existence of a valid forum-selection clause would have a different effect on the analysis under § 1412 compared to the analysis under § 1404.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). Because "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system," "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 63 (citation omitted).

"The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Atl. Marine*, 571 U.S. at 63.[2] One adjustment is that courts "should not consider arguments about the parties' private interests" and instead "may consider arguments about public-interest factors only." *Id.* at 64.[3] This is so because, "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.*

With this backdrop in mind, the Court begins by considering the validity of the forum-selection clause in the Billing Agreement. "Forum selection clauses are *prima facie* valid, and are enforceable absent a strong showing by the party opposing the clause 'that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.'" *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

SESH has failed to make such a "strong showing" here. Indeed, SESH did not even

---

[2] Only one of those adjustments is relevant here, however, as *Atlantic Marine* involved a defendant moving to transfer a case in line with a forum-selection clause, whereas this case involves a defendant moving to transfer the case in conflict with the forum-selection clause.

[3] "Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Atl. Marine*, 571 U.S. at 62 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

- 4 -

mention the forum-selection clause in its motion.  In its response, ARS invoked the forum-selection clause and, perhaps anticipating SESH's counter-arguments, submitted an array of evidence suggesting Davis had authority to execute the Billing Agreement (and, ergo, the forum-selection clause) on SESH's behalf.  (Doc. 182-1 at 21-48 [Exs. 3-5].)  In its reply, SESH offers no contrary evidence—it simply offers the *ipse dixit* that "Davis signed without proper authority."  (Doc. 185 at 8.)

Given this record, not to mention the presumption of validity that generally attaches to forum-selection clauses, the Court is compelled to find that the forum-selection clause in the Billing Agreement is valid.  (This conclusion does not, of course, preclude SESH from ultimately prevailing on its "Davis lacked authority" defense to the claims asserted in the complaint—it's simply the conclusion the Court reaches now, based on the present record, for purposes of resolving the motion to transfer venue.)  And because the forum-selection clause is valid, the Court need not consider all of the arguments advanced by SESH regarding its private interests in having the case transferred to the Southern District of Texas.  The Court may only consider the public-interest factors, which "will rarely defeat a transfer motion." *Atl. Marine*, 571 U.S. at 64.  This case is no exception, as it has many ties to Arizona and Arizona law applies to many of its issues.  (*See generally* Doc. 40 at 6-7 ["[V]enue is proper in Arizona because a substantial part of the events or omissions giving rise to the claims occurred in Arizona. . . . As previously discussed, SESH directed patient information and medical claims documents to Arizona in order for ARS to perform work on its behalf.  Moreover, ARS employees processed these reimbursement claims in and submitted them from Arizona."].)  Accordingly,

**IT IS ORDERED** that SESH's Renewed Motion to Transfer Venue to the Southern District of Texas (Doc. 149) is **DENIED**.

Dated this 11th day of January, 2019.

_____
Dominic W. Lanza
United States District Judge

- 5 -